J-S22017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHALINE A. WEBB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN SHORTER | : | |
| | : | |
| Appellant | : | No. 2515 EDA 2021 |

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  2111V7030

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:                     **FILED APRIL 4, 2023**

Sean Shorter (Appellant) appeals, *pro se*, from the November 9 2021, final order granting the petition for protection from abuse (PFA)[1] filed by his former paramour, Shaline A. Webb (Appellee), for a period of three years.[2] As will be discussed below, Appellant and Appellee were involved in short-term intimate relationship, which produced a child, G.W.  Based on the record, it appears that Appellee was still married at the time of the liaison, and she returned to her husband after breaking up with Appellant.[3]  Nevertheless, Appellant and Appellee were still in communication with each other because

---

[1] 23 Pa.C.S. §§ 6101-6122.

[2] Appellee did not file a responsive brief.

[3] *See* N.T., 11/9/21, at 35.

of their custody arrangement regarding G.W. On appeal, Appellant raises issues concerning: (1) the court erred by denying his constitutional right to confront and cross-examine Appellee; (2) the court erred by denying his request to admit certain evidence; (3) the court erred by allowing Appellee to testify as to several statements her husband made to her; and (4) the court erred by not finding that some of Appellee's testimony was barred by the statute of limitations. For the reasons below, we affirm.

On November 2, 2021, Appellee filed a PFA petition against Appellant, requesting that he be prohibited from abusing, harassing, stalking, threatening, and contacting her, and be excluded from her home. After an *ex-parte* hearing that same day, the Honorable Ida Chen issued a full temporary order of protection against Appellant. The order also directed that Appellant be prohibited from possessing weapons.

The matter than proceeded to a hearing on November 9, 2021, before the Honorable Viktoria Kristiansson. Both parties were present and testified. The trial court summarized their testimony as follows:

> Appellee and Appellant were in an intimate relationship from August 2018 to approximately January 2019 and share a child, G.W., who was two years old as of the November 9[, 2021, PFA] hearing.
>
> Appellee testified that on October 30, 2021, she and her husband, Steven Webb, drove to Appellant's home to drop off G.W. for a custody exchange. During this exchange in Appellant's driveway, the child became upset. Appellee testified that "[G.W.] was screaming. She was terrified. She doesn't really have an established relationship with [Appellant]. He has not been present in her life and she was extremely fearful." Appellant testified G.W.

- 2 -

stopped crying and agreed to go with him when he reminded her of their time in the park during their previous visit. Appellant took G.W. out of the car and placed her on the ground to obtain her belongings from the car. Appellee testified she then picked up the child and returned her to the car because Appellant "would not calm down" and "he was screaming and it was making [G.W.] scream and cry even worse." Appellant stated that G.W. had calmed down before he removed her from the car and did not begin crying again until the Appellee picked her up. Appellee and her husband suggested that everyone go to the park together. Appellant insisted he have his custody time alone because he wanted to explain to the child that he was her father. Appellee testified that her husband was "trying to explain to [Appellant] why [G.W.] was upset and try to come to some peaceful agreement."

Appellant went in and out of his house a few times and "on the second or third time he walked towards [Appellee's] husband, slapped his hands down and said what the F are you talking about." Appellant told Appellee that if she and her husband left with the child, he would call the police. Appellee put the child in the car, and when she and her husband got into the vehicle to leave, Appellant punched, but did not break, the rear passenger window where the child was sitting. Appellant screamed, "what is your address" and "I want your address." Appellee testified that they left Appellant's home and pulled into a police station nearby "to check the glass to make sure that it wasn't broken." Appellee stated she "was terrified because if he had shattered that glass[, and that the] glass could have went into the side of [G.W.'s] face [and] into her eyes."

The following day on October 31, 2021, Appellant went to Appellee's home with the Upper Moreland Township police to execute a custody exchange on a day that Appellee testified was not agreed to. Appellee told police that they would not be doing the custody exchange and that she was filing for a PFA against Appellant. Appellee told the officer to "ask [Appellant] to not come back to our residence." After speaking with the officer, Appellee left her residence, and Appellant requested and received a police report number from the officer on the scene. Appellee testified, "I don't want him to have my address and I don't want him to be able to have access to come to my address because that's not where we agreed to do any custody drop offs and he should not be coming to my address. I feel very uncomfortable with him

- 3 -

doing so." Appellant testified he knew of the general apartment building where Appellee lived because in April 2021, he drove her home from the hospital when she asked him to do so.

Appellee also testified about two events that occurred prior to October 2021. First, when she was [six] months pregnant, Appellant threatened to throw her out of a moving vehicle when she told him he was driving too fast. Appellee said she "didn't say anything else" because she "was fearful that he could do that and I didn't want to be in harms way." Appellant testified "that incident simply didn't happen." Second, Appellee testified that in January 2019, Appellant "shoved" her, threw keys at her, "said F-U," and "slammed [the] door as he was leaving."

When asked by the court why she needed an order, Appellee testified that "based on his previous behavior towards me and what happened [on October 30th], I don't feel safe being around [Appellant] or him having access to being around me." Additionally, Appellee expressed concern because she believed Appellant was licensed to carry weapons and "I don't feel confident that [Appellant] is stable emotionally or otherwise to not have an order in place for my safety. I just don't."

Trial Ct. Op., 2/3/22, at 3-5 (record citations omitted & some paragraph breaks added). "Appellant [also] entered additional evidence into the record, including test messages, call logs, and medical records." *Id.* at 1.

After considering both sides, the trial court found Appellant had violated the PFA Act. *See* Order, 11/9/21; *see also* Trial Ct. Op. at 1. The court further determined:

Appellee was entitled to continued protection for a three-year period. The final did not grant Appellee the full protection she requested, but granted [her] three years of limited protection, stating that Appellant shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against Appellee. Appellant was permitted to communicate with Appellee, and he was not excluded from Appellee's home. The order . . . prohibit[ed] Appellant from possessing weapons.

- 4 -

***Id.*** at 1-2.

Appellant filed the present appeal on December 7, 2021, and attached what the trial court described as "a convoluted two-page discussion of complaints about the November 9[, 2021,] ruling." Trial Ct. Op. at 2. Because it "was unable to deduce Appellant's actual complained of errors[,]" the court directed to him to file a Pa.R.A.P. 1925(b) concise statement no later than January 6, 2022. ***Id.*** On December 28, 2021, the trial court received Appellant's response, dated December 24th. "Appellant sent his response directly to the undersigned judge but did not file the same [Rule] 1925(b) statement with the Philadelphia Clerk of Courts." ***Id.***

On January 11, 2022, this Court issued a rule to show cause why Appellant had not responded to the trial court's December 16th order. ***See*** Order, 1/11/22. The order directed Appellant to show cause within ten days as to why the appeal should not be dismissed for waiver of all issues. ***See id.***, *citing* Pa.R.A.P. 1925(b); ***J.P. v. S.P.***, 991 A.2d 904 (Pa. Super. 2010). Appellant filed a response on January 18, 2022. On January 21, 2022, this Court discharged the rule to show cause, indicating that the trial court's Rule 1925(b) order did not clearly direct where Appellant was to send his concise statement, which was in contravention of the Pennsylvania Rules of Appellate Procedure. ***See*** Order, 1/21/22; ***see also*** Pa.R.A.P. 1925(b)(3)(ii)-(iii) (the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of

on appeal). Before we may address the merits of Appellant's appeal, we must determine whether Appellant has waived his claims for failing to properly file a concise statement.

When ordered to do so by the trial court, an appellant must file a timely Rule 1925(b) statement to preserve issues for appellate review. **See Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*). It is well-settled that any issues not raised in a timely Rule 1925(b) statement are waived on appeal. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998); **see also** Pa.R.A.P. 1925(b)(4)(vii). Moreover, "[i]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation . . . therefore, we look first to the language of that order." **Rahn v. CONRAIL**, 254 A.3d 738, 745-46 (Pa. Super. 2021) (citations omitted). Accordingly, when the court's order "is inconsistent with the requirements of Rule 1925(b)(3)(iii), . . . the waiver provisions of subsection (b)(4)(vii) do not apply." **Id.** at 746 (citation omitted). Here, because the trial court's Rule 1925(b) order was not explicitly clear where Appellant was to send his concise statement, we decline to find waiver. Accordingly, we continue with this appeal.

Appellant raises the following issues in his *pro se* brief:

[1.] Did the trial court error in law, by allowing testimonial evidence on the court[']s record that was outside the statute of limitations?

[2.] Did the trial court error in law, by not allowing the submission of evidence to the court's record, and stating it was [h]earsay?

[3.] Did the trial court error in law and its discretion when allowing testimony (with weight), by [A]ppellee about the accusations of abuse on October 30, 2021, that did not meet the PFA rules or statute[?]

[4.] Did the trial court error in law and in its discretion, when ending the hearing abruptly while [A]ppellant was recross examining [A]ppellee, on a just given testimony (by [A]ppellee)? When plead by [A]ppellant why, the trial court gave the response "It's just not relevant"; then refusing to allow the cross examination, and ending the trial.

[5.] Did the trial court error in law or in its discretion, when showing an overall manifest abuse of discretion, by its actions during the hearing?

Appellant's Brief at 13 (some emphasis & spacing omitted; grammatical errors in original).

We review PFA orders pursuant to the following standard of review: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (citation omitted).

Preliminary, we note "[a]lthough this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Norman for Estate of Shearlds v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1118-19 (Pa. Super.

- 7 -

2019) (citation omitted), *appeal denied*, 223 A.3d 668 (Pa. 2020), *cert. denied*, 141 S. Ct. 301 (U.S. 2020).

In its Rule 1925(a) opinion, the trial court initially determined that the issues "[a]s written in" Appellant's *pro se* concise statement "[were] underdeveloped and ambiguous[;]" thereby, failing to conform to the requirements of Pennsylvania Rule of Appellate Procedure 1925. Trial Ct. Op. at 2. The court opined Appellant's claims "should be waived." **Id.** Nevertheless, in "an abundance of caution," the court addressed three issues it "surmised Appellant attempted to raise" in his concise statement.[4] **Id.** at 2-3.

We note a Rule 1925(b) concise statement must be detailed enough for the trial court to identify and address the issues the appellant wishes to advance on appeal. **Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006). Rule 1925 provides that a concise statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii).[5] "Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). It

---

[4] The trial court identified issues concerning the sufficiency and admissibility of evidence, and the court's purported denial of his "rights" when it stopped his cross-examination of Appellee. **See** Trial Ct. Op. at 5.

[5] We refer to Rule 1925's language that was applicable at the time of this proceeding. Rule 1925 was later amended, effective April 1, 2022.

is well-settled that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. A [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *In the Interest A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (citations and quotation marks omitted).

Indeed, a review of Appellant's "concise" statement reveals that it is three pages in length, fails to present any legal issues cogently, and is scattershot. *See* Appellant's Rule 1925(b) Concise Statement, 12/28/21, at 1-3 (unpaginated). For example, Appellant states the following: "MY FIRST COMPLAINT IS; the verdict ruled by the [trial] court, being that there was no evidence brought forth from the plaintiff." *Id.* at 1. In that same "complaint," Appellant alluded to assertions that the charges at issue fell outside the statute of limitations and the court demonstrated "a biased view towards" him. *Id.*

Appellant's second "complaint" is "the [trial] court's decision not to accept two pieces of evidence from the defense[.]" Appellant's Rule 1925(b) Concise Statement at 1 (unpaginated). The first is a copy of the current custody agreement, which he alleges would show that he has a right to be at Appellee's residence. *Id.* Appellant appears to contend the court erroneously determined the agreement "was already implied" with "no other explanation[ ] given[,]" and therefore, the court's decision is "vague" and "leaves open interpretation to what the court's meaning is." *Id.* at 1-2. The second piece

of evidence is the "Domestic Standby Police Report," which he states the court denied based on hearsay reasons, but he "feels in this case when trying to establish credibility between [Appellee and Appellant], the exception to the "'[h]earsay' law could have been used." *Id.* at 2. Appellant then refers to the "present sense impression" exception[6] to the hearsay rule, which he states:

> This rule needs an independent corroborating piece of evidence to state that the recorder of the evidence was there. This could have been the already given testimony from [Appellee and Appellant] who both had stated the [o]fficers [were] present[ ]. The defense feels that once again this was a vague reason for the "[h]earsay" rule which has many layers and exceptions to this rule. This could have been a chance to establish credibility once again by exposing the contradiction given by [Appellee]'s testimony.

*Id.* at 2.

> Appellant's third "complaint" is the following:
>
> The most [egregious] complaint made in this appeal. This is because [Appellant]'s rights were taken away during the hearing with no explanation given but [p]ertinence. This did not explain the interruption by the court during cross examination questioning, or giving the order that [Appellee] not answer any more questions from the defense, and when pressed by the defense it was stated by the court, ["]Your questioning is not [p]ertinent."

Appellant's Rule 1925(b) Concise Statement at 2 (unpaginated). Appellant also alleges the court's ruling was "unjust[,] and not supported by any evidence at all. The only evidence offered throughout the proceedings was by the defense." *Id.* at 3.

---

[6] *See* Pa.R.E. 803(1).

- 10 -

We agree with the trial court's determination that in his court-ordered concise statement, Appellant's allegations are vague, and consequently, he fails to "concisely identify each error that [he] intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Accordingly, we find Appellant waived all his issues on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (finding waiver where concise statement was too vague to allow trial court to determine specifics of appellate claim).

Furthermore, even if Appellant's claims were not waived for the above-mentioned reasons, we note with disapproval that his brief is deficient as it does not comply with several Pennsylvania Rules of Appellate Procedure. Specifically, it fails to include a statement of jurisdiction, a statement of the scope and standard of review, and a summary of the arguments. *See* Pa.R.A.P. 2111(a)(1), (3), (6). Moreover, the argument section of his brief is not "divided into as many parts as there are questions to be argued[,]" and contains longwinded, repetitive, and occasionally incoherent arguments in support of his challenges. *See* Pa.R.A.P. 2119(a). "[I]t is an appellant's duty to present arguments that are sufficiently developed for appellate review." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). We reiterate that appellate courts "will not become the counsel for an appellant," and develop arguments for a *pro se* party. *Commonwealth v. Gould*, 912

- 11 -

A.2d 869, 873 (Pa. Super. 2006). As such, we also would conclude that the deficiencies in Appellant's argument encumbers meaningful appellate review.

In any event, even if we were to reach the merits of Appellant's claims, we would conclude they warrant no relief, and adopt the February 3, 2022, opinion of the trial court as our own. *See* Trial Ct. Op. at 8-19.

For all of the foregoing reasons, we affirm the trial court's November 9, 2021, final PFA order. We further direct that a copy of the trial court's February 3, 2022, Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

Judge Sullivan joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023